[Cite as *State v. Hand*, 2017-Ohio-7340.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2016-CA-51 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-0165 |
| | : | |
| RICKY LYLE HAND | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of August, 2017.

. . . . . . . . . . .

MEGAN FARLEY, Atty. Reg. No. 0088515, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

DAVID MILES, Atty. Reg. No. 0013841, 125 West Main Street, Suite 201, Fairborn, Ohio 45324
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Ricky Lyle Hand appeals from his conviction and sentence following a negotiated guilty plea to one count of aggravated robbery, five counts of robbery, and one count of breaking and entering.

{¶ 2} Hand advances two assignments of error. First, he contends the record does not support the individual prison sentences he received or the consecutive sentences imposed. Second, he argues that his sentences individually and collectively constitute cruel and unusual punishment.

{¶ 3} The record reflects that the State obtained a 30-count indictment against Hand in April 2016, charging him with 11 counts of aggravated robbery, 13 counts of robbery, two counts of breaking and entering, two counts of safecracking, one count of attempted safecracking, one count of abduction, and numerous firearm specifications. The charges stemmed from a three-month crime spree during which Hand, who was 46 years old, broke into two businesses and robbed 13 others. The crime spree ended when Hand's final victim, a drive-through clerk, shot him in the shoulder and ribs. During the robberies, Hand threatened his victims with a black handgun. On one occasion, he also brandished a butcher knife. After his arrest, Hand claimed the handgun he used was "fake." At the scene of the last robbery, police did locate a plastic handgun that had been spray painted black.

{¶ 4} Hand confessed to committing each of the crimes with which he was charged. He explained that he was a drug addict and that he was using the money he stole largely to support his drug habit. Hand pled guilty to the seven counts set forth above in exchange for dismissal of the remaining counts. Following a presentence investigation,

the trial court imposed a 10-year prison sentence for aggravated robbery, six-year prison sentences for each of the five robberies, and a 12-month prison sentence for breaking and entering. The trial court ordered the aggravated robbery and robbery sentences to be served consecutively for an aggregate term of 40 years in prison. The trial court made the additional 12-month sentence concurrent. This appeal followed.

{¶ 5} In his first assignment of error, Hand contends the record does not support the individual sentences or the consecutive sentences he received. With regard to the individual sentences, he notes that his 10-year sentence for aggravated robbery was one year short of the statutory maximum. He also points out that the six-year sentences for robbery were only two years short of the statutory maximum. Finally, he notes that his 12-month sentence for breaking and entering was the statutory maximum. Hand acknowledges that each sentence was within the statutory range. He argues, however, that the trial court erred in not imposing a minimum prison term for each offense. He maintains that the statutory seriousness and recidivism factors, along with his remorse and drug addiction, support such a result. With regard to his consecutive sentences, Hand recognizes that the trial court made the findings required by R.C. 2929.14(C)(4) to impose them. Therefore, he acknowledges that the consecutive sentences are not contrary to law. He argues, however, that the record does not support the trial court's consecutive-sentence findings.

{¶ 6} Upon review, we find no merit in Hand's arguments. Where a sentence is not contrary to law, we may modify or vacate it only if we find by clear and convincing evidence that the record does not support it. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. This standard applies to Hand's individual sentences

and to the trial court's findings in support of consecutive sentences. *Id.* at ¶ 22-23. With regard to the individual sentences, no particular findings were required. The trial court simply was obligated to consider the principles and purposes of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. During the sentencing hearing, and in its judgment entry, the trial court indicated that it had complied with this requirement. (Sentencing Tr. at 15; Doc. #11). Although it was not required to do so, the trial court expressly discussed various considerations, including seriousness and recidivism factors, during the sentencing hearing. (Sentencing Tr. at 15-19). With regard to R.C. 2929.11, it referenced, among other things, the need to protect the public from future crime and to punish Hand. It also found that the sanctions imposed were commensurate with the seriousness of his conduct. With regard to R.C. 2929.12, the trial court reasoned:

> 2929.12(B) are factors that indicate the conduct is more serious than conduct normally constituting the offense. I do not have a victim-impact statement for any of these charges. So to what extent the victim suffered serious physical, psychological, or economic harm would be a matter of speculation. I understand that they are all glad the Defendant has been caught. They are all glad that he's facing the judicial system and are looking for a time that they don't have to worry about him in the community.

> 2929.12(C), factors that indicate that the Defendant's conduct was less serious than conduct normally constituting the offense, the only factor that came close was whether or not the Defendant caused or expected to cause physical harm to persons or property. I don't have any information

that he caused physical harm, but there were several threats of physical harm with deadly weapons; and giving the Defendant the benefit of the doubt as to the firearm, which we know in the last instance was a plastic gun, but there was at least one instance where he also had a knife. He put the knife to one victim. I don't know how you could expect not to cause physical harm should things go awry. So I don't find any factors under that subsection.

2929.12(D), indicating that the Defendant is likely to commit future crimes, the Court finds at the time he committed these offenses he was under post-release control pursuant to 2967.28 of the Revised Code for an earlier offense; that he had previously been adjudicated delinquent and had not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent.

He had two breaking and enterings in1987 for which he was given time in the Department of Youth Services and in 1989 had his first conviction for breaking and entering.

The Defendant also has a history of criminal convictions as an adult. Those go from 1990 to 2011. There was an extensive period of time from this first one, which was in—well, the first one was in 1989, which I talked about earlier, which was breaking and entering. He was given a suspended prison sentence, placed on probation, violated probation. Prison sentence was imposed.

In 1990 he had the passing bad check. So he did get an 18-month

prison sentence; and there's 1991. The next offense was in 2001, which was possession of drugs. That was a misdemeanor offense.

Then there was a couple of years without an offense. In 2003 and 2004, theft offenses. In the first one he was given a suspended jail sentence. That jail sentence then was imposed in 2004 when he violated his probation. He received another jail sentence for the 2004 theft.

The 2005 safecracking, received a one-year prison term—excuse me. Safecracking and breaking and entering, a one-year prison term on each count concurrent.

He was then given judicial release. Shortly after the judicial release, probation violation was filed, the balance of his prison sentence was imposed.

2005, his burglary conviction, four years' prison, which had been ordered to be served concurrent with the 2005 safecracking and breaking and entering. Again, the judicial release and the violation of the judicial release is all for the same case, for the 2005 safecracking, B and E, and burglary.

2007, breaking and entering. There were two cases involving breaking and entering. He was given time with incarceration, a total of 18 months; and, again, that was also involved with his probation violation in the 2005 cases.

2011 was a robbery conviction for which he was given four years in prison. The Defendant spoke about that.

When he was released from prison on the robbery, he was placed on post-release control; and shortly thereafter, these offenses began. So it's a rather consistent history when you consider the time he was incarcerated. There was never much time when he got out of prison before he committed another offense. He was not rehabilitated to a satisfactory degree. He did not respond favorably to sanctions previously imposed based on the number of times he violated probation, including when he was placed on probation after being released on judicial release.

There does not appear to be genuine remorse here.

As to 2929.12(E), factors indicating the Defendant is less likely to commit future crimes, I find no factors. There is no military record to consider. The Defendant scored very high on the Ohio Risk Assessment Survey.

(Sentencing Tr. at 15-19).

{¶ 7}  Having reviewed the record, we cannot say that it clearly and convincingly does not support the trial court's consideration of the statutory principles and purposes of sentencing or the seriousness and recidivism factors as they pertain to the sentences Hand received.

{¶ 8} Hand argues that none of the statutory "more serious" factors in R.C. 2929.12(B) apply, whereas one "less serious" factor in R.C. 2929.12(C) applies because he used a "fake" gun and, therefore, did not cause or expect to cause physical harm to any person or property. He also asserts that his actions resulted from a drug habit and that he exhibited remorse.

{¶ 9} We agree that none of the "more serious" factors in R.C. 2929.12(B) apply, a fact recognized by the trial court. Although the trial court rejected it, one "less serious" factor arguably applies insofar as Hand may not have caused or expected to cause physical harm given his claimed use of a plastic gun on every occasion. With regard to remorse, the trial court had discretion to conclude, based in part on Hand's decades-long criminal career, that his expressions of remorse were not genuine. We note too that Hand's claimed use of a plastic gun was reflected in the nature of the charges to which he pled guilty. The five robbery charges at issue would have been aggravated robberies if the handgun were real because a "deadly weapon" would have been involved. *See* R.C. 2911.01(A)(1). In our view, the use of a plastic handgun to scare his victims into submission did not necessarily make Hand's simple robbery offenses under R.C. 2911.02(A)(2) less serious than conduct normally constituting that offense, which involves threatening to inflict physical harm. The implied threat of physical harm is, to the victims, no less even if a fake gun is used. Moreover, that perceived threat and fear of robbery at gunpoint creates risk of a violent or even deadly response.

{¶ 10} The most significant flaw in Hand's challenge to his individual sentences is that it ignores his criminal record, his prior violations of probation and post-release control, his prior failures to be rehabilitated, and his repeated failures to respond favorably to less severe sanctions. With regard to the statutory factors indicating that recidivism is more likely, nearly all of them applied. *See* R.C. 2929.12(D). Specifically, Hand was on post-release control, he previously had been adjudicated a delinquent child, he had a long history of serious criminal convictions, he had not been rehabilitated satisfactorily and had not responded favorably to previous sanctions, and the trial court found that he had

not shown genuine remorse. Although Hand attributed his offenses to drug addiction, he admitted previously rejecting treatment and not taking it seriously. He claimed this time would be different, but the trial court was not obligated to believe him. Finally, as to the statutory factors indicating that recidivism is less likely, the trial court reasonably concluded that none of them apply. *See* R.C. 2929.12(E).

{¶ 11} For the foregoing reasons, Hand's individual sentences are not contrary to law, and we cannot say the record clearly and convincingly does not support the trial court's consideration of the statutory principles and purposes of sentencing or the seriousness and recidivism factors.

{¶ 12} We reach the same conclusion with regard to the trial court's imposition of consecutive sentences. As set forth above, Hand acknowledges that the trial court made the findings required by R.C. 2929.14(C)(4) to impose consecutive sentences. Therefore, the consecutive sentences are not contrary to law. *State v. Mabra*, 2d Dist. Clark No. 2014-CA-147, 2015-Ohio-5493, ¶ 47 (noting that consecutive sentences are not contrary to law when the trial court makes the requisite statutory findings). The only remaining question is whether the record clearly and convincingly does not support the trial court's findings under R.C. 2929.14(C)(4), which permits consecutive prison terms

> if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the

offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 13}** Here the trial court made all of the foregoing findings. Upon review, we do not find by clear and convincing evidence that the record fails to support them. The indictment in this case contained 30 counts involving 46-year-old Hand breaking into two businesses and robbing 13 others. In exchange for his guilty plea to seven counts (one count of aggravated robbery, five counts of robbery, and one count of breaking and entering), the State dismissed the other counts and nine firearm specifications. At the time of his current offenses, Hand was on post-release control following a four-year prison sentence for robbery.[1] Moreover, his history of criminal conduct—which spans decades and includes juvenile adjudications for breaking and entering and adult convictions for passing bad checks, drug possession, theft, safecracking, breaking and entering,

---

[1] This fact satisfies R.C. 2929.14(C)(4)(a), rendering the trial court's additional alternative findings under R.C. 2929.14(C)(4)(b) and (c) unnecessary.

burglary, and robbery—supports a finding that consecutive sentences are necessary to protect the public and to punish Hand, and that consecutive sentences are not disproportionate to the seriousness of his conduct and the danger he poses to the public. Despite being committed to DYS as a juvenile and serving at least four prior prison terms as an adult, Hand has demonstrated a lack of rehabilitation. The PSI report reflects that he has spent more than 10 years of his life incarcerated at various times. Although he attributes his criminal behavior to longstanding drug addiction, Hand admitted during questioning that he never took drug-treatment opportunities seriously. Hand insisted that this time would be different, but the trial court was not obligated to believe him. In light of Hand's extensive criminal history, his demonstrated lack of rehabilitation after prior convictions and prison sentences, and the dismissal of other charges, we cannot conclude that the record clearly and convincingly fails to support the trial court's consecutive-sentence findings. *Compare State v. Terry*, 2d Dist. Clark No. 2016-CA-65, 2017-Ohio-7266 (upholding consecutive sentences totaling 27 years in prison where a defendant with a lengthy criminal record and with drug and alcohol problems pled guilty to a second-degree felony and 15 fourth and fifth-degree felonies in exchange for dismissal of six other counts and non-pursuit of 37 potential charges); *State v. Beverly*, 2016-Ohio-8078, 75 N.E.3d 847 (2d Dist.) (affirming aggregate 50-year prison sentence where 23-year-old defendant with a drug addiction and a prior criminal history engaged in a months-long crime spree that included convictions for engaging in a pattern of corrupt activity, multiple burglaries, attempted burglaries, receiving stolen property, fleeing and eluding, and having a weapon while under disability). The first assignment of error is overruled.

{¶ 14} In his second assignment of error, Hand contends his individual and cumulative sentences constitute cruel and unusual punishment in violation of the Ohio and United States Constitutions. In particular, he contends the sentences, individually and cumulatively, are grossly disproportionate to the criminal conduct at issue. In support, he argues:

The individual sentences imposed by the trial court for each conviction is grossly disproportionate to the conduct related to the respective offense. Appellant did not use a real gun. No victim was physically injured or suffered serious psychological injury. The trial court should have imposed the minimum sentence for each offense, not the maximum or upper level sanction for each offense. The trial court did not properly consider the statutory guidelines of R.C. 2929.11 and R.C. 2929.12 for each offense.

The cumulative sentence of forty years imposed by the trial court does not pass the proportionality test. Due to appellant's age, the sentence imposed is a death sentence with little or no hope for release given appellant's life expectancy. The cumulative sentence is greater than an offender who commits a murder or rape. Appellant should have received a sentence around one-half of what he received.

(Appellant's brief at 12).

{¶ 15} We find Hand's argument to be unpersuasive. His proportionality argument fails with respect to his cumulative 40-year sentence because proportionality review in the context of cruel and unusual punishment does not apply to aggregate sentences.

"[F]or purposes of the Eighth Amendment and Section 9, Article I of the Ohio Constitution, proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively. Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 20.

{¶ 16} We also reject Hand's proportionality argument as it relates to the individual sentences he received. Each sentence was within the authorized range, and only one of those sentences (the 12-month sentence for breaking and entering, which the trial court imposed concurrently) was a maximum sentence. Trial courts may impose sentences within the statutory range, and a sentence within that range typically cannot constitute cruel and unusual punishment. *Id.* at ¶ 21. In any event, we see nothing about Hand's individual sentences that is "grossly disproportionate" to his corresponding crimes, particularly in light of his lengthy criminal record and prior prison terms. *Id.* at ¶ 14 (noting that gross disproportionality exists only when the sanction imposed under the circumstances is conscience shocking to a reasonable person and to the community's sense of justice). Contrary to Hand's argument, we also see no support for his claim that the trial court did not properly consider the principles and purposes of sentencing and the statutory seriousness and recidivism factors. The second assignment of error is overruled.

{¶ 17} The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.


Copies mailed to:

Megan Farley
David Miles
Hon. Richard J. O'Neill